UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,                          No. CR-12-0095 EMC

        Plaintiff,

   v.                                              **ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT**

OSCAR AQUINO MONTERO,
                                                   **(Docket No. 13)**
        Defendant.
_____/

    Defendant Oscar Aquino Montero has filed a motion to dismiss his indictment for illegal reentry in violation of 8 U.S.C. § 1326.  He collaterally attacks his underlying removal proceeding on the ground that his due process rights were violated.  Having considered the parties' briefing and oral argument and the record before this Court, and for the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

**I.    FACTUAL & PROCEDURAL BACKGROUND**

    The facts below are uncontested.  Where the government expressed doubt about Defendant's recollection of certain facts (including his conversation with an immigration agent in San Francisco), the government failed to present any contrary testimony or evidence even though presumably it could have done so.  The Court credits unrebutted testimony.

    Defendant came to the United States when he was 15 years old in order to help support his family in Mexico.  Aquino Montero Decl. ¶ 1.  While living in San Francisco, Defendant learned the trade of roofing and began working in that industry.  *Id.* ¶ 2.  In 2005, he traveled to Hawaii to do work for his employer, where he met and later married a U.S. citizen.  *Id.* ¶ 3; Def's Ex. A.  He and his wife now have a U.S. citizen daughter.  Def's Ex. A.

United States District Court

For the Northern District of California

1    In 2006, after he was married, Defendant returned to San Francisco for another work

2    assignment.  Aquino Montero Decl. ¶ 4.  On July 21, 2006, Defendant was arrested and charged

3    with assault with a deadly weapon and attempted robbery, a felony.  Defendant pled guilty to assault

4    in exchange for a sentence of time served (39 days) and three years of probation.  While in

5    detention, an immigration agent interviewed Defendant and advised him (without an interpreter) that

6    he should sign a "deportation order" in order to allow him to get out of detention more quickly.  *Id.* ¶

7    5.

8    On July 24, 2006, DHS lodged an Immigration Detainer with the San Francisco County Jail

9    (and a card including the incorrect information that Defendant was single), and completed a Notice

10   to Appear, Bond, and Custody Processing Sheet on Form I-265.  Def's Ex. B, C, E.  The Record of

11   Deportable/Inadmissible Alien, also dated July 24, 2006, similarly describes Defendant as being

12   single.  Ex. F.[1]

13   On August 29, 2006, Defendant was transferred to immigration custody in San Francisco.

14   Kang Aff., Ex. A.  Defendant met with an immigration agent, whom he told he was married to a

15   citizen.  *Id.* ¶ 6.  After Defendant asked whether he might be eligible for voluntary departure, the

16   agent told him he was not eligible for voluntary departure if he had any felonies on his record.  *Id.*

17   Defendant then received three forms from the DHS agent; a "Non-Contested Deportation

18   Questionnaire," a document entitled "Notice of Rights and Request for Disposition," and a Notice to

19   Appear.  Def's Ex. Ex. H, I; Aquino Montero Decl. ¶ 6; Kang Aff., Ex. B.  The Notice of Rights did

20   not include any information about voluntary departure.  Instead, the form listed only three options:

21   Defendant could request a hearing to determine "whether or not [he] may remain in the United

22   States"; he could indicate that he feared harm if returned to his country; or he could admit that he

23   was in the U.S. illegally and give up his right to a hearing before the Immigration Court.  Def's Ex.

24   H.  Similarly, neither the Non-Contested Deportation Questionnaire nor the Notice to Appear

25   contained any information about eligibility for voluntary departure.  Def's Ex. I; Kang Aff., Ex. B.

26   The only document mentioning voluntary departure was a Notice to Respondent which informed

27

28   [1] Other documents in Defendant's A-File correctly indicate that he was married, though they
     do not indicate his spouse's nationality.  *See* Ex. D.

2

**United States District Court**
For the Northern District of California

1  Defendant, "You will be advised by an immigration judge before whom you appear, of any relief

2  from removal for which you may appear eligible including the privilege of departing voluntarily.

3  You will be given a reasonable opportunity to make any such application to the immigration judge."

4  Kang Aff., Ex. B.

5        On September 19, 2006, along with a group of detainees in Eloy, Arizona, Defendant

6  received a hearing before an IJ.  Def's Ex. K; Parties' Stipulation Re: Transcripts of Audio

7  Proceedings ("Transcript"), Docket No. 31.[2]  The hearing took place in two stages.  First, addressing

8  the group en masse, an IJ on a pre-recorded video gave 30 minutes of instructions to the group.[3]

9  Transcript, Docket No. 31.  Midway through the tape, the recorded IJ addressed relief from removal

10  and voluntary departure.  For example, the recording informed the group, "It is your responsibility to

11  determine if any form of relief or restriction upon your removal is available." *Id.* at 13:53.  However,

12  the IJ also stated that "if during my inquiry, I discover one [form of relief] which may be available, I

13  will advise you of it. *Id.* at 14:09.  The IJ further stated to the group, "If no relief or restriction upon

14  removal appears available, you may still be able to seek voluntary departure." *Id.* at 14:39.  The IJ

15  stated that voluntary departure "may affect your ability to return legally in the future," but did not

16  explain any of those potential effects. *Id.* at 15:42.  The video stated, "[I]f you appear to be eligible

17  I will inquire of the government's attorney if it opposes your receiving this relief." *Id.* at 16:17.  "If

18  the government opposes, you may still apply," at which point the IJ would schedule an evidentiary

19  hearing in 30 days. *Id.* at 16:47, 16:55-17:01.  The IJ informed the group that "if for any reason you

20  do not request this hearing . . . [y]ou are giving up your right to apply for voluntary departure," and

21  IJ would issue an order of removal. *Id.* at 17:43, 17:51, 17:58.

22  ///

23  ///

24  ///

25

26        [2] The Court cites to the time stamps provided in the parties' stipulated transcript at Docket
27  No. 31.

28        [3] In the transcript, before the second stage of the hearing, the IJ referred to the "pre-recorded explanation."

United States District Court

For the Northern District of California

Second, during a later proceeding, an IJ addressed Defendant individually.[4]  The tape reveals the IJ spoke at rapid pace.[5]After asking Defendant a series of yes or no questions apparently establishing his removability and other biographical details (*e.g.*, "Were you born in Mexico?"), the IJ stated simply, "The government's position?"  *Id.* at 32:53.  The government responded, "Oppose sir."  *Id.*  The IJ then stated (again at a rapid clip),

> So the government opposes voluntary departure, but you may still apply.  If you do, I'll schedule the hearing for you within the next 30 days, but not today.  If you do not request the hearing though, you are also giving up the right to apply for voluntary departure and I will issue the order of removal today.  Do you want to have that hearing, or do you want to finish your case today?

*Id.* at 32:54.  Defendant replied, "Today."  *Id.*  The IJ did not inform Defendant that he was actually eligible for voluntary departure, although his A-file indicated he was statutorily eligible under INA § 240B(a)(1).  *See* 8 U.S.C. § 1229c(a)(1) (alien is ineligible for voluntary departure if convicted of an aggravated felony or terrorism).[6]  The IJ then issued an order of removal and Defendant waived his appeal.  *Id.* at 33:15-48.  Defendant was deported on September 19, 2006.

On January 26, 2012, DHS encountered Defendant in San Francisco County Jail. Def's Ex. G.  Defendant has been charged with illegal reentry based on his prior deportation.  Defendant now moves to dismiss his indictment.

## II. **DISCUSSION**

A.  Legal Standard

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has a due process right to bring a collateral attack challenging the validity of his underlying deportation order because it serves as a predicate element of his conviction."  *United States v. Melendez-Castro*, 671 F.3d 950,

---

[4]  The Court notes that the tape is difficult to hear, as both the IJ and the translator spoke very quickly. *Id.* at 30:24.  As one potential indication of the lack of clarity in the proceedings, the Defendant answered "no" to the IJ's question as to whether he was married to a U.S. citizen even though he was in fact married to a citizen at that time.  Def's Ex. K, at 32:35.

[5]  Although at oral argument, the government raised the possibility that the tape speed was accelerated during duplication, the government presented no evidence of this, even though it could have.  The suggestion that the speed was altered is speculative and rejected.

[6]  The government does not contest his eligibility.

United States District Court

For the Northern District of California

953 (9th Cir. 2012) (citing *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004)).

To succeed on such a collateral attack, a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued 'improperly deprived [him] of the opportunity for judicial review' and (3) that 'the entry of the order was fundamentally unfair.'" *United States v. Ortiz–Lopez*, 385 F.3d 1202, 1203–04 (9th Cir. 2004) (per curiam) (quoting 8 U.S.C. § 1326(d)). "An underlying removal order is 'fundamentally unfair' if: (1)[a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo–Figueroa*, 364 F.3d at 1048 (citation and quotations omitted).

As the government acknowledges, the third factor, whether the proceedings were fundamentally unfair, is often dispositive and bears directly on the other factors. *Id.* at 1049. Accordingly, the Court begins with that factor.

B.   Fairness of the Underlying Proceeding

   1.   Due Process

Defendant argues that his underlying removal proceeding violated his due process rights. Specifically, he contends that he was not meaningfully informed of his right to seek voluntary departure.  He argues that any waiver of his right to a hearing on voluntary departure was not "considered and intelligent." *Ubaldo-Figueroa*, 364 F.3d at 1049.

"The Due Process Clause of the Fifth Amendment requires that an alien in immigration proceedings be 'made aware that he has a right to seek relief' so that he has 'a meaningful opportunity to appeal the fact that he was not advised of that right.'" *Melendez-Castro*, 671 F.3d at 954 (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).  "[W]here the record contains an inference that the petitioner is eligible for relief from deportation, the IJ must advise the alien of this possibility and give him the opportunity to develop the issue." *Arrieta*, 224 F.3d at 1079 (internal quotations and citation omitted).  "This includes providing an alien with the opportunity to apply for relief." *Melendez-Castro*, 671 F.3d at 954 (citing *Arrieta*, 224 F.3d at 1079).

United States District Court

For the Northern District of California

The IJ has a mandatory duty to inform a detainee of any "apparent eligibility" for relief. *Moran-Enriquez v. Immigration and Naturalization Service*, 884 F.2d 420, 423 (9th Cir. 1989).[7] "The Ninth Circuit has read the term 'apparent eligibility' to mean that 'where the record, fairly reviewed by an individual who is intimately familiar with the immigration laws-as IJs no doubt are-raises a reasonable possibility that the petitioner may be eligible for relief,' the IJ must address the issue with the deportee." *United States v. Andrade-Partida*, 110 F. Supp. 2d 1260, 1264 (N.D. Cal. 2000) (quoting *Moran-Enriquez*, 884 F.2d at 422). Such a duty arises "[e]ven if the alien's eligibility is not 'clearly disclosed' in the record"; "so long as the record as a whole raises 'a reasonable possibility' of eligibility for such relief," "the IJ has a duty to discuss discretionary relief with the alien." *Andrade-Partida*, 110 F. Supp. 2d at 1268 (finding eligibility apparent where record disclosed "that defendant had entered the United States when he was eight years old, that he had lived in this country for 16 years, that he spoke fluent English, and that he became a permanent legal resident in 1988," even though "defendant never informed the IJ that he was married to a citizen of the United States, that he had three citizen children or that deportation would impose a severe hardship on his family") (quoting *Moran-Enriquez*, 884 F.2d at 423).

In the instant case, the Court concludes that Defendant was not meaningfully informed of his rights. First, Defendant provides unrebutted testimony that he was informed by an immigration agent that he was ineligible for voluntary departure when in fact he was eligible. Aquino Montero Decl. ¶ 6. The Ninth Circuit has "long held there is a violation of due process when the government affirmatively misleads an alien as to the relief available to him." *United States v. Arias-Ordonez*, 597 F.3d 972 (9th Cir. 2010) (citing *Walters v. Reno*, 145 F.3d 1032, 1043 1054 (9th Cir. 1998)

---

[7] Relief from removal includes voluntary departure. *See, e.g.*, *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1203 (9th Cir. 2004) ("The IJ did not inform Ortiz-Lopez that he was eligible for any form of relief from removal, including voluntary departure from the United States."); *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012); *United States v. Basulto-Pulido*, 219 F. App'x 717, 719 (9th Cir. 2007) ("Basulto-Pulido's due process rights were violated when the IJ failed to inform him of his apparent eligibility to apply for pre-hearing voluntary departure."); *see also United States v. Resuleo-Flores*, CR 11-0586 SI, 2012 WL 761701, at *5 (N.D. Cal. Mar. 7, 2012) ("While *Moran* and other earlier Ninth Circuit cases discussed the due process obligation of IJs within the context of the federal regulation, later cases have not been so limited. . . . Instead, the Ninth Circuit has expansively interpreted the obligation to inform, and has grounded it in the Due Process Clause of the Fifth Amendment, rather than mooring it in a federal regulation.").

1   (holding that giving "confusing" and "affirmatively misleading" forms to immigrants charged with

2   document fraud deprived recipients of the due process rights).  While the government seeks to

3   discount Defendant's testimony that he was told by an immigration agent he was not eligible for

4   voluntary departure as "uncorroborated," as noted above, the government failed without explanation

5   to produce any evidence to the contrary (including, *e.g.*, declaration from agents at the detention

6   facility).

7          Second, the documents provided to Defendant prior to his removal proceeding did not inform

8   him of such a right, nor did it clarify or refute the erroneous information Defendant had received

9   from the agent.  To the contrary, some documents indicated that Defendant only had a limited set of

10  options, none of which included voluntary departure.  *See* Def's Ex. H.  The only document to even

11  mention voluntary departure, the Notice to Respondent, simply stated that the IJ would inform

12  Defendant if he was eligible, without any further explanation.  *See* Kang Aff., Ex. B.  When "the

13  combined effect of all the forms together is confusion," notice to the immigrant is constitutionally

14  deficient.  *Walters*, 145 F.3d at 1043.  In *Walters*, the court found notice to the immigrant "not only

15  confusing," but "affirmatively misleading," when the form "specifically advise[d] the alien that a

16  final order on the document fraud charges will direct him to pay a fine and to cease and desist from

17  his wrongful conduct," but "sa[id] nothing about the fact that a final order will result in a finding of

18  deportability and excludability, or the likelihood that it will result in the alien's immediate

19  deportation." *Id.*  The result is the same here; whether the forms provided to Defendant are viewed

20  independently or in combination with the erroneous information Defendant received from the

21  immigration agent, Defendant was misled into believing he was ineligible for voluntary departure.

22         Third, the pre-recorded video Defendant heard en masse with other detainees gave him no

23  meaningful information about his eligibility for voluntary departure, or of the consequences of

24  failing to do so.  Instead, like the forms described above, the video erroneously stated it was the

25  immigrant's responsibility to determine whether he was eligible for relief, rather than disclosing the

26  IJ's duty to so inform the immigrant.  The video only stated if no relief from removal appears

27  available, an alien "may" still be able to seek voluntary departure.  It says nothing about who can

28  seek voluntary departure or what the criteria for eligibility are.  The video disclosed that failure to

United States District Court

For the Northern District of California

1    seek voluntary departure "may affect [the immigrant's] ability to return legally in the future," but it

2    provided no information as to how it might have such an effect.  Transcript at 15:42.  Indeed, it is

3    not even clear from the transcript and the IJ's voice on the recording whether voluntary departure

4    would "affect [the immigrant's] ability to return legally in the future" by making it easier or harder

5    to return.  Thus, the video provides no basis for the Court to conclude that Defendant "received

6    adequate advisement of the consequences of his waiver . . . ."  *Ramos*, 623 F.3d at 681 (citing

7    *Pallares-Galan*, 359 F.3d at 1097); *see also United States v. Basulto-Pulido*, 219 F. App'x 717, 719

8    (9th Cir. 2007) (finding waiver of appeal invalid where the IJ "did not explain what pre-hearing

9    voluntary departure was").

10          Fourth, the IJ's own cursory statements to Defendant during his hearing did not meaningfully

11    inform him of his rights.  In the context of the prior statements and representations Defendant had

12    received, as discussed above, nothing in the IJ's cursory statements would have disabused Defendant

13    of the notion that he was ineligible for voluntary departure.  Indeed, the IJ merely stated that the

14    government opposed voluntary departure, but that Defendant could still apply.  Such comments, in

15    the context of the information Defendant had previously received both from the agent and from the

16    pre-recorded IJ video, would seem to merely confirm that Defendant had no realistic shot at

17    voluntary departure.  *See, e.g.*, *Melendez-Castro*, 671 F.3d at 954 (finding IJ failed to meaningfully

18    inform defendant of his right to seek voluntary departure where IJ "at first told Melendez–Castro

19    that he was eligible for voluntary departure, [but] almost in the same breath the IJ told him that he

20    would not get the relief if he applied for it because he had a criminal record").

21          In addition, even viewing the IJ's statements in isolation, the IJ did not provide Defendant

22    with any meaningful information about voluntary departure.  The IJ did not say anything to the

23    Defendant suggesting the Defendant was in fact apparently eligible for voluntary departure.  Nor did

24    he elicit any information from Defendant that would inform his eligibility.  The IJ did not even ask

25    whether Defendant understood his right to seek voluntary departure.  Thus, the IJ failed to

26    adequately advise Defendant of his rights to apparent eligibility for relief.  *See Ramos*, 623 F.3d at

27    681; *Melendez-Castro*, 671 F.3d at 954; *see also Basulto-Pulido*, 219 F. App'x at 719; *United States

28    v. Rodriguez-Arroyo*, 467 F. App'x 746, 747 (9th Cir. 2012) (finding IJ failed to meaningfully

inform immigrant of right to see voluntary departure where the IJ "referred to it during the group hearing and told the aliens about some of its benefits, but he did not explain the circumstances under which such relief was available"); *Cf. United States v. Corrales-Beltran*, 192 F.3d 1311, 1317-18 (9th Cir. 1999) (IJ's failure to advise defendant of right to appeal bail amount was not fundamentally unfair where the IJ had otherwise thoroughly informed defendant of his rights, including "ask[ing] a series of questions to ensure that Corrales-Beltran understood that the Board of Immigration Appeals could reverse the deportation order, that his conviction for a narcotics offense precluded his eligibility for a waiver and the finality of his decision to waive appeal"). *See generally Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002) ("The IJ must adequately explain the hearing procedures to the alien, *including what he must prove to establish his basis for relief*.") (emphasis added).[8]

The government seems to argue that because the chronology of the IJ's questioning of the government at the hearing comported with the description in the previous pre-recorded video, the IJ implicitly conveyed to Defendant that he was apparently eligible for voluntary departure. *See Opp.* at 6-7. Specifically, the IJ asked the government its "position," which apparently meant its position on voluntary departure (though the IJ did not say so); this followed the pre-recorded video which stated that "[I]f you appear to be eligible I will inquire of the government's attorney if it opposes your receiving this relief." Transcript at 16:17. However, it is implausible to suggest that a detainee in Defendant's position would be able to deduce merely from the pattern of the IJ's questions to the government that the IJ has determined the Defendant appeared eligible for voluntary departure. It is implausible to expect the Defendant to have held a specific memory from a thirty-minute video of this particular predicate to the IJ's later[9] question to the government agent. The government's assertion is especially unreasonable in the context of this case, in which the IJ merely (and quickly and perfunctorily) asked for the "government's position" without any further meaningful explanation as to what he was referring. This disjointed sequence presented by the video and the

---

[8] The Court also notes that the written transcript overstates the clarity of the proceedings, as both the IJ and the translator spoke quite quickly and ran through their questions in rapid succession.

[9] The transcript does not indicate how long of a gap there was between the video and the second stage of the hearing for Defendant.

United States District Court

For the Northern District of California

1   IJ's conclusory remarks failed to satisfy the IJ's duty to inform Defendant of his eligibility for

2   voluntary departure.

3       The government argues that Defendant expressly waived his right to a hearing on voluntary

4   departure.  While the IJ did offer Defendant such an opportunity, the IJ's failure to meaningfully and

5   effectively inform Defendant of his apparent eligibility and the consequences of waiving that right

6   vitiated the effectiveness of Defendant's waiver.

7       "'The government bears the burden of proving valid waiver in a collateral attack of the

8   underlying removal proceedings,' and it must do so by clear and convincing evidence." *United*

9   *States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) (quoting *Ramos*, 623 F.3d at 680; citing

10  *Pallares–Galan*, 359 F.3d at 1097 (additional citations omitted)).  "A waiver is not 'considered and

11  intelligent' when '"the record contains an inference that the petitioner is eligible for relief from

12  deportation," but the Immigration Judge fails to 'advise the alien of this possibility and give him the

13  opportunity to develop the issue.'" *United States v. Castaneda-Barajas*, CR-11-2069-RMP, 2011

14  WL 3626786, at *3 (E.D. Wash. Aug. 16, 2011) (quoting *United States v. Muro-Inclan*, 249 F.3d

15  1180, 1184 (9th Cir. 2001); *Arrieta*, 224 F.3d at 1079).  Courts "indulge every reasonable

16  presumption against waiver, and do not presume acquiescence in the loss of fundamental rights."

17  *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010) *cert. denied*, 132 S. Ct. 240 (2011).  The

18  government can meet its burden of proof that a waiver is valid with the introduction of "official

19  records which on their face show a valid waiver of rights in connection with a deportation

20  proceeding." *United States v. Galicia-Gonzalez*, 997 F.2d 602, 604 (9th Cir. 1993).  For the reasons

21  stated above, the government has not met its burden here.

22      Accordingly, the Court finds that the government has failed to demonstrate a considered and

23  intelligent waiver of Defendant's rights.  *See Ramos*, 623 F.3d at 680 (court must "indulge every

24  reasonable presumption against waiver, and [must] not presume acquiescence in the loss of

25  fundamental rights").  Defendant has thus demonstrated his due process rights were violated in his

26  removal proceeding.

27      The above-described defects in Defendant's proceedings exempt him from exhausting his

28  administrative remedies.  *United States v. Ortiz–Lopez*, 385 F.3d 1202, 1204 n. 2 (9th Cir.2004) (IJ's

10

failure to inform of eligibility for relief from removal negates waiver and exempts defendant from exhaustion requirement). Defendant has also demonstrated that the proceedings improperly deprived him of the opportunity to see judicial review. *Id.* (deprivation of judicial review occurs when detainee not informed of right to seek relief). Therefore, the only remaining question is whether Defendant can demonstrate prejudice.

2. <u>Prejudice</u>

In addition to finding a due process violation, in order to demonstrate that his removal proceeding was fundamentally unfair so as to undermine the § 1326 charge. Defendant must demonstrate prejudice. To satisfy a showing of prejudice, Defendant "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *See Ubaldo-Figueroa*, 364 F.2d at1050 (quoting *Arrieta*, 224 F.3d at 1079). Defendant can show prejudice by proffering one plausible legal challenge to his removal order that he could have pursued. *Id.*

In this case, Defendant has demonstrated that he had a plausible ground for relief. As Defendant argues and the government concedes, he met the statutory requirements for voluntary departure. Defendant was also married to a U.S. citizen and had worked in the United States for several years. Thus, discretionary relief was a plausible outcome given his background. *See, e.g.*, *United States v. Garcia*, 2008 U.S. Dist. LEXIS 63804 (E.D.N.Y. Aug. 15, 2008) ("In exercising discretion to decide whether to grant voluntary departure, the IJ may consider an alien's personal and criminal history.") (citing *In re Eloy Arguelles-Campos*, 22 I. & N. Dec. 811, 817, 1999 WL 360383 (BIA 1999) (IJ considers, *inter alia*, length of residence in the U.S. and family ties to the U.S.)); *see also Campos-Granillo v. I.N.S.*, 12 F.3d 849, 852 (9th Cir. 1993) ("The IJ is required to weigh favorable and unfavorable factors [in considering whether to grant voluntary departure] by evaluat[ing] all of them, assigning weight or importance to each one separately and then to all of them cumulatively.") (internal citations and quotation marks omitted); *Basulto-Pulido*, 219 F. App'x at 719 (finding plausible claim for voluntary departure based on common-law marriage to U.S. citizen and citizen children).

United States District Court

For the Northern District of California

1    The government does not contest that Defendant was eligible for voluntary departure; rather,

2    it contends he cannot demonstrate a plausible basis for why he would have received this

3    discretionary relief.  However, the government's only argument is that Defendant cannot show a

4    plausible ground for relief because the information before the IJ *on the date of his hearing* contained

5    certain misstatements and factual errors that would have made the IJ unlikely to grant voluntary

6    departure.  In other words, the government does not contend Defendant had no plausible basis for

7    relief; it merely contends Defendant had not yet presented a plausible basis on the day of his

8    hearing.

9    The government's argument is unavailing.  Notwithstanding any confusion before the IJ as to

10   certain facts (*e.g.*, Defendant's marital status and the fact that he was married to a U.S. citizen), the

11   record is clear that any hearing on voluntary departure would have taken place not that same day but

12   within 30 days thereafter, during which time Defendant would have had ample opportunity to

13   correct and/or augment the record.  Defendant has shown a plausible basis for relief based on his

14   testimony that he was able to meet each of the requirements for voluntary departure:  testimony

15   corroborated with the marriage certificate in the record – the authenticity of which the government

16   has not questioned.

17   Accordingly, the Court concludes that Defendant has demonstrated his underlying

18   proceedings were fundamentally unfair.  His due process rights were violated and he suffered

19   prejudice thereby.  The Court further concludes that Defendant has satisfied each of the elements

20   mandated by § 1326(d) to collaterally attack his deportation.  Defendant's motion to dismiss the

21   indictment is therefore **GRANTED**.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

12

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendant's motion to dismiss the indictment is **GRANTED**. This Order disposes of Docket No. 13.


IT IS SO ORDERED.


Dated:  September 20, 2012

_____
EDWARD M. CHEN
United States District Judge